# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0584

LARRY G. TYRUES, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Argued September 9, 2008                                    Decided October 2, 2009)

*Kenneth M. Carpenter* of Lawrence, Kansas, with whom *Mark R. Lippman* of La Jolla, California, was on the brief for the appellant.

*Nisha C. Wagle*, with whom *Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a separate concurring opinion. HAGEL, *Judge*, filed a separate opinion concurring in the result and dissenting in part. LANCE, *Judge*, filed a separate opinion concurring in part and dissenting in part, in which SCHOELEN, *Judge*, joined.

MOORMAN, *Judge*: The appellant, Larry G. Tyrues, through counsel, seeks review of an April 7, 2004, Board of Veterans' Appeals (Board) decision that denied disability compensation for a lung disorder as a chronic disability because the evidence did not support a finding that it resulted from an undiagnosed illness and therefore did not warrant service connection on a presumptive basis under 38 U.S.C. § 1117. Both parties filed briefs, and the appellant filed a reply brief. On November 15, 2005, the Court affirmed the Board's decision and held that it did not have jurisdiction to review a September 1998 Board decision that denied the appellant disability compensation on a

direct basis. *Tyrues v. Nicholson*, 20 Vet.App. 231 (table), 2005 WL 3157695 (2005). On March 11, 2008, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) vacated this Court's decision and remanded the matter for the Court to reconsider its decision in light of two decisions reached after the Court issued its November 2005 decision in this case: *Joyce v. Nicholson*, 443 F.3d 845 (Fed. Cir. 2006), and *Roebuck v. Nicholson*, 20 Vet.App. 307 (2006). *Tyrues v. Peake*, 273 F. App'x 921, No. 2006-7040, 2008 WL 907458 (Fed. Cir. Mar. 11, 2008). A panel of the Court heard oral argument on September 9, 2008. Thereafter, this case was called before the full Court. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

For the reasons set forth below, the Court holds that the Secretary permissibly processed and issued a final decision denying benefits based on direct service connection, and remanded for the consideration of benefits based upon presumptive service connection, in separate decisions, in 1998 and 2004. We further hold that because benefits based on direct service connection were finally decided in a 1998 Board decision that was not timely appealed, nor reopened and considered in the 2004 Board decision, we lack jurisdiction to now review the denial of benefits for service connection on a direct basis. As discussed more fully below, the Court will dismiss, for lack of jurisdiction, that part of the appeal finally decided in the September 1998 Board decision, and we will vacate the 2004 decision of the Board now on appeal and remand the matters addressed therein for further adjudication consistent with this opinion.

## I. FACTS

Mr. Tyrues served on active duty in the U.S. Army from September 1969 to April 1971, and from September 1990 to May 1991. Record (R.) at 16-17. He served in the Persian Gulf from November 1990 to April 1991. R. at 17. In March 1994, Mr. Tyrues was hospitalized for treatment of refractory pneumonia and tonsilitis. R. at 227. In March 1995, he sought VA benefits for a lung disability on the basis of direct service connection. R. at 112. In December 1996, following a VA hearing officer's suggestion that his lung symptoms and various other complaints, including sore and aching joints, may warrant a claim for "Persian Gulf Syndrome," Mr. Tyrues sought service connection on that basis as well. R. at 146-47, 150.

2

In a March 1997 decision, the Board remanded the matter of Mr. Tyrues's entitlement to service connection for a lung disorder for further development, including the procurement of medical records and a VA medical examination to obtain a current diagnosis of his claimed respiratory disability and to assist in a determination as to whether any current lung disorder was related to his periods of active service. R. at 155. The Board directed that following development, the VA regional office (RO), if it issued an adverse decision, should provide Mr. Tyrues with a Supplemental Statement of the Case (SSOC) and return the case to the Board. R. at 156. The following month, the RO notified Mr. Tyrues that it had received his claim for benefits based on his Persian Gulf War service and requested further evidence. R. at 163-65. An April 1997 RO Compensation and Pension Examination Worksheet noted that the Board had remanded an appeal from Mr. Tyrues and directed compliance with the Board remand as to Mr. Tyrues's claim for service connection "for a lung disorder due to Persian Gulf War service." R. at 168. The RO also noted that Mr. Tyrues "has amended his claim to include s/c [(service connection)] for aching joint, memory loss, [and] a stomach condition." R. at 168.

A May 1997 VA medical examination report identified the then-present complaints of Mr. Tyrues to be lung disorder, joint pain, and memory loss. R. at 190. The VA examiner diagnosed Mr. Tyrues as having "1. Possible Persian Gulf Syndrome with shortness of breath, joint pain, and memory loss. 2. Degenerative arthritis feet with bilateral Hallux valgus deformity." R. at 191. The examiner opined that "[i]t is only speculation on my part, but, he did not have a lung disorder prior to his service in the Persian Gulf as he does now." *Id.*

On April 20, 1998, the RO issued a decision denying service connection for a lung disorder, which the RO noted was a "remanded issue." R. at 242. In its discussion of the lung disorder, the RO specifically stated that "service connection for a lung disorder on a direct basis remains denied" and that, in addition, "service connection for lung problems, diagnosed on VA examination as shortness of breath, as due to an undiagnosed illness is denied." R. at 243. The RO also denied service connection for three other separately identified conditions – joint pain as due to an undiagnosed illness, memory loss as due to an undiagnosed illness, and a stomach condition as due to an undiagnosed condition. The RO concluded that (1) the joint pain was determined to result from known clinical diagnoses of degenerative arthritis of the feet, tendonitis of the right shoulder, and lumbar strain; (2) the memory loss was not shown with chronic symptoms of a certain duration

3

within the requisite period; and (3) the stomach condition was determined to result from a known clinical diagnosis of irritable bowel syndrome. R. at 243-45. The record on appeal does not contain any subsequent document from Mr. Tyrues to the RO, or from the RO to Mr. Tyrues, as to these three conditions. *See* R. at 1-402.

On April 20, 1998, the RO notified Mr. Tyrues that it was returning to the Board the matter of service connection for a lung disorder and enclosed an SSOC that discussed "service connection for a lung disorder." R. at 248-54. The SSOC reiterated the findings contained in the rating decision of the same date – denying benefits for a lung disorder on a direct basis and for lung problems, diagnosed as shortness of breath, as due to an undiagnosed illness. R. at 254. Mr. Tyrues responded to the SSOC stating that the issue in this case is entitlement to service connection for a lung disorder. R. at 256.

In September 1998, the Board (1) denied disability compensation based on direct service connection for a lung disorder because it found that the matter was not well grounded, and (2) remanded to the RO the issue of disability compensation based on presumptive service connection for an undiagnosed illness manifested by shortness of breath for further development to include an additional VA medical examination. R. at 265-76. The Board discussed the evidence of record as it pertained to symptoms of the lung and chest, including congestion, colds, and flu-like symptoms, and discussed evidence regarding pulmonary function tests, breath sounds, any pulmonary or pleural abnormalities, as well as diagnoses of pneumonia. R. at 269-70. The Board did not refer to any symptoms other than those involving the chest and lungs. The Board did not make any reference to the joint pain, stomach condition, and memory loss. *See* R. at 265-75. The Board instructed that, in regard to the remanded matter, the VA medical examiner should render an opinion as to whether, for each symptom alleged by Mr. Tyrues, the symptom is attributable to a "known" clinical diagnosis, in light of the medical history and examination findings, and, if so, the examiner should identify the diagnosed disorder and render an opinion as to its etiology and date of onset. R. at 274. At the time it rendered the 1998 decision, the Board furnished Mr. Tyrues a notice concerning his appellate rights, which included notification that he could appeal the decision with regard to matters that had not been remanded. R. at 275-76. Mr. Tyrues did not file a Notice of Appeal (NOA) of this Board decision.

In December 1998, Mr. Tyrues underwent a second VA examination. R. at 285-87. The examiner reviewed Mr. Tyrues's claims file and opined that "[t]he history obtained from the veteran, the claim folder review, and the examination findings indicate that the veteran probably has chronic bronchitis, which gets worse when he gets exposed to dust, paint, etc." R. at 287.

In February 2000, the Board denied Mr. Tyrues's claim for disability compensation for "shortness of breath as a chronic disability resulting from an undiagnosed illness" because it found the evidence of record did not establish presumptive service connection. R. at 313. In December 2000, the Court vacated the February 2000 Board decision and remanded the matter to the Board pursuant to the parties' joint motion for remand. *See* R. at 339. The Court ordered that VA provide Mr. Tyrues a respiratory examination and that it accomplish any notification and development required under the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. R. at 340-41. In December 2001, Mr. Tyrues underwent a VA medical examination during which the examiner, Dr. Plump, diagnosed Mr. Tyrues as having "mild chronic bronchitis" with a history of refractory pneumonia and stated his "medical opinion that the patient's shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service." R. at 350.

In July 2002, the Board's Case Development Unit (CDU) found that because Dr. Plump had attributed Mr. Tyrues's symptoms to both chronic bronchitis and to an undiagnosed illness, the results of the December 2001 VA examination were inconsistent, and additional development was needed. R. at 365-66. It ordered a further examination, by another examiner. It directed that the new examiner must (1) identify the diagnosed disorder to which he attributed any of Mr. Tyrues's symptoms; (2) explain his diagnosis; and (3) render an opinion as to the etiological basis and date of onset of such diagnosed disorder. R. at 371-72. Or, if the examiner was "unable to attribute the identified symptoms to a diagnosable disorder, he should so indicate" and also indicate "whether or not this could be related to Gulf War service." R. at 372. In October 2002, Mr. Tyrues underwent an additional VA medical examination, by a different VA examiner (not Dr. Plump), after which the examiner stated that Mr. Tyrues "does not have any respiratory problems, symptoms[,] or signs at this time. . . . In my opinion he is allergic to certain paints and vapo[r] and these occa[s]ional respiratory symptoms are not related to the exposure of fumes in Gulf War." R. at 370. In April 2004, the Board issued the decision on appeal here. R. at 1-12.

## II.  ANALYSIS

### A. Scope of the Appeal

#### *1.  Position of the Parties*

The appellant argues that the Court has jurisdiction to review the September 1998 Board decision that both denied service connection for a lung disorder on a direct basis and remanded the issue of presumptive service connection for an undiagnosed illness manifested by shortness of breath.  The appellant asserts that the 1998 Board decision "concerns the same claim" decided by the April 2004 Board decision here on appeal.  Appellant's Brief (App. Br.) at 5.  He contends that because both decisions address the same claim, i.e., service connection for a lung disorder, he has not lost his right to appeal the September 1998 Board decision denying direct service connection because, under *Harris v. Derwinski*, 1 Vet.App. 180 (1991), it would have been premature to file an appeal from that decision prior to the Board's finally deciding the matter of his entitlement to service connection on a presumptive basis in the April 2004 Board decision.  App. Br. at 5; *Harris*, 1 Vet.App. at 183 (holding that a Board decision that both denied one claim and remanded a second claim was not final because the denied claim was inextricably intertwined with the remanded claim).

During oral argument, the appellant maintained that he was seeking compensation for one disability, that is, a disability resulting from a lung problem (or a disability related to his lung), and that there are two separate theories of entitlement to VA compensation for his lung disorder: presumptive service connection under section 1117 and direct service connection.  In support of his argument, the appellant argued that under *Roebuck*, *supra*, the finality of the September 1998 Board decision, which he contends incorrectly split the appellant's claim for service connection based on two theories of etiology, was "held in suspense" until the Board issued the April 2004 decision, and thus, the Court has jurisdiction to review the September 1998 Board decision.

The Secretary, on the other hand, argues that there are two separate claims involved here – a claim for entitlement to service connection for a diagnosed disability, i.e., a diagnosed lung condition, under the provisions of 38 U.S.C. § 1110[1] and a claim for entitlement to service

---

[1]Section 1110 of title 38, U.S. Code, provides basic entitlement to compensation for a disability resulting from an injury or disease contracted in the line of duty in active military service.  38 U.S.C. § 1110; *see* 38 C.F.R. § 3.303(a) (2009) (provides compensation for "a particular injury or disease resulting in disability [that] was incurred coincident with service").  In order to establish entitlement to direct service connection for a disability, the appellant must show (1) "competent evidence of current disability [by way of] a medical diagnosis"; (2) "incurrence or aggravation of a disease

connection for an undiagnosed disability under the provisions of 38 U.S.C. § 1117.[2]  Secretary's Br. at 18-20.  He asserts that the claims involve two separate legal and factual bases for entitlement to service connection.  *Id.*  He contends that the Court lacks jurisdiction to review the 1998 Board decision because the NOA was filed with the Court 5½ years after the September 1998 Board decision, long past the 120-day filing deadline for an appeal to this Court and the record reflects no motion for reconsideration was timely filed with the Board to toll the statutory deadline.  *Id.* at 16-17.

As discussed below, the Court need not decide whether the appellant had two separate claims – one for direct service connection for a lung disability and one for presumptive service connection for a chronic disability resulting from an undiagnosed illness – or a single claim for disability compensation based on two separate theories that might support service connection and the award of benefits.  This is because, in either case, the 1998 Board decision was a final decision, and the appellant failed to file an NOA with the Court within 120 days after notice of the mailing of that decision, as required under 38 U.S.C. § 7266(a) to invoke our jurisdiction.

---

or injury in service [by way of] lay or medical evidence"; and (3) "a nexus between the in-service injury or disease and the current disability [by way of] medical evidence."  *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed. Cir. 1996) (table); *see Hickson v. West*, 12 Vet.App. 247, 252 (1999).

[2] In order to establish entitlement to service connection under section 1117, the  evidence must show that the appellant is a Persian Gulf veteran who (1) exhibits objective indications; (2) of a chronic disability; (3) which became manifest either during active military service in the Southwest Asia theater of operations during the Persian Gulf War, or "to a degree of 10% or more not later than [September 30, 2011]"; and the evidence must show that (4) such symptomatology by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis."  *Guiterrez v. Principi*, 19 Vet.App. 1, 7 (2004). Section 1117 provides for entitlement to compensation on a presumptive basis to a Persian Gulf War veteran who complains of having an undiagnosed illness that is (or illnesses that are) 10% or more disabling during the presumptive period established by the Secretary. 38 U.S.C. § 1117(a)(1)(A) and (B); *see Gutierrez*, 19 Vet.App. at 6.  By definition, section 1117 only provides compensation for symptoms of a chronic disability that have not been attributed to a "known clinical diagnosis." 38 C.F.R. § 3.317(a)(1)(ii) (2009); *see Stankevich v. Nicholson*, 19 Vet.App. 470, 472 (2006) ("The very essence of an undiagnosed illness is that there is no diagnosis."); *Guiterrez*, 19 Vet.App. at 10 (a Persian Gulf War veteran's symptoms "*cannot* be related to any known clinical diagnosis for compensation to be awarded under section 1117"); 60 Fed. Reg. 6660, 6665 (Feb. 3, 1995) ("The undiagnosed illness provisions of Public Law 103-446, as implemented by § 3.317, were specifically intended to relieve the unique situation in which certain Persian Gulf War veterans found themselves unable to establish entitlement to VA compensation because their illnesses currently cannot be diagnosed.").

## 2. *General Law*

This Court's jurisdiction is governed by 38 U.S.C. §§ 7252(a) and 7266(a). Section 7252 provides that this Court "shall have exclusive jurisdiction to review decisions of the [Board]." 38 U.S.C. § 7252(a). Section 7266(a) provides that to obtain review by this Court "of a final decision of the Board of Veterans' Appeal," a person "adversely affected by such decision" must file an NOA "with the Court within 120 days after the date on which the notice of the decision is mailed pursuant to section 7104(e) of this title." 38 U.S.C. § 7266(a). Accordingly, this Court has appellate jurisdiction to review final Board decisions. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004).

The Federal Circuit in *Maggitt v. West* discussed our jurisdictional statute. The Federal Circuit held that our Court erred when it held that it did not have jurisdiction to hear arguments raised for the first time before our Court. In reaching that decision, the Federal Circuit said that "[t]he government is correct in the assertion that the jurisdiction of the Veterans Court by statute only reaches to a 'decision of the Board.'" 202 F.3d 1370, 1375 (Fed. Cir. 2000) (quoting 38 U.S.C. § 7252(a)). The Federal Circuit then said: "A 'decision' of the Board, for purposes of our Court's jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted . . . , or they are denied." *Id.* at 1376. In *Kirkpatrick v. Nicholson*, the Federal Circuit subsequently noted that this definition of "decision" in section 7252 was "in line with the definition of a Board decision in 38 U.S.C. § 7104, the Board's jurisdictional statute," which provides that "'[e]ach decision of the Board shall include– . . . an order granting appropriate relief or denying relief.'" 417 F.3d 1361, 1364 (Fed. Cir. 2005) (quoting 38 U.S.C. § 7104(d)).

The Board's 1998 decision in this case contained an order denying relief. *See Maggitt, supra*. It specifically denied benefits – entitlement to service connection for a lung disorder on a direct service-connected basis. Pursuant to its remand directives, however, the Board decision also left open the possibility that the appellant may be entitled to benefits for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, on a presumptive basis. Therefore, the Court must decide whether the remand of entitlement to service connection for a chronic disorder manifested by shortness of breath rendered nonfinal the Board's decision to deny benefits for a lung condition based on direct service connection. In other words, the question is whether the 1998 Board decision that adversely resolved direct service connection for a lung condition and also

8

remanded to the RO another matter was "final" with regard to the resolved matter for purposes of judicial appeal to this Court such that the appellant was required to appeal that decision within 120 days after it issued.

### 3. Roebuck *and* Joyce

In resolving the question, the Federal Circuit's remand of the instant case suggested that we specifically consider two recent decisions. We first consider this Court's decision in *Roebuck*, *supra*, where the Court addressed the finality of a Board decision. The Court notes that *Roebuck*, by its terms, involved a "unique" set of circumstances where the Board issued a decision in two separate parts, explicitly stating its intent to do so, without remanding a matter to the RO. *Roebuck*, 20 Vet.App. at 316. Specifically, Mr. Roebuck claimed entitlement to service connection for a lung disorder as secondary to tobacco use and nicotine dependence and also as secondary to asbestos exposure. In December 2002, the Board issued a decision denying service connection for a lung disorder as secondary to nicotine dependence and, in the same decision, expressly stated that it would also issue a separate decision concerning the asbestos exposure theory of causation. Less than one year later, the Board issued another decision denying service connection for a lung disorder as secondary to asbestos exposure. *Id*. at 317. The Court held that the first Board decision was not final where, "in the unique circumstances" presented, the Board (1) bifurcated its decision of Mr. Roebuck's lung disorder claim, (2) denied service connection for a lung disorder under a nicotine dependence theory, and (3) "stated that it would 'prepare a separate decision addressing [the issue]' of service connection for a lung disorder under an asbestos exposure theory." *Id.* at 309, 316.

The *Roebuck* Court held that

when a claimant raises more than one theory in support of a claim during the time while that claim is still pending before VA, *if the Board* bifurcates those theories or arguments *and addresses them in separate decisions*, the time for appeal is not ripe until *the Board* issues a final decision denying all theories [and, u]nder those circumstances, the 120-day requirement for filing a[n NOA] will not begin to run *until the Board* has denied all theories in support of the claim that it has identified for consideration.

*Id.* at 315-16 (emphasis added). In holding that the first Board decision was nonfinal, the Court noted that "to adjudicate a claimant's appeal of one theory of a claim while **the Board** is still deliberating on another theory supporting that same claim, our efforts would be potentially duplicative and unnecessary." *Id.* at 315 (emphasis added). Thus, among the unique circumstances

9

of *Roebuck* was the Board's issuance of its decision in two parts without remanding either theory to the RO for further development and readjudication. *Id.* at 316 (noting that the Board's decision "was issued by the Board in two parts separated by less than a year"). Accordingly, *Roebuck* is limited to the situation where the Board, in its decision denying one theory, specifically states that the Board will be issuing, without a remand to the RO, a second decision on another theory of the same claim. To read *Roebuck* more broadly creates a new exception to the rule of finality and ignores the fact that *Roebuck* explicitly was based on unique circumstances.

Thus, *Roebuck* is not dispositive of the issue here regardless of whether the appellant is deemed to have filed two separate claims or one claim. First, if we assume the appellant sought benefits for two *separate disabilities* – a diagnosed lung disorder, described as both pneumonia and bronchitis, and an undiagnosed chronic condition manifested by shortness of breath alleged to be the result of his service in the Persian Gulf – *Roebuck* is simply inapposite because the Court in that case found that there was one claim. *Id*. at 315-16; *see also Elkins v. Gober*, 229 F.3d 1369, 1376 (Fed. Cir. 2000) (holding that "[b]ecause . . . each 'particular claim for benefits' may be treated as distinct for jurisdictional purposes, a veteran's claims may be treated as separable on appeal"). Second, if we assume the appellant raised two theories in support of a single claim for VA benefits for a lung condition – direct service connection and presumptive service connection available to Persian Gulf War veterans – the facts are distinguishable from *Roebuck* because here the Board issued a final decision with regard to benefits based upon direct service connection, and remanded to the RO for consideration of benefits based upon presumptive service connection, whereas in *Roebuck*, the Board denied one theory and expressly stated that it would issue a second Board decision on the second theory.

We next consider the Federal Circuit's decision in *Joyce*, *supra*, which held that a decision of our Court was not final where our Court had affirmed in part, reversed in part, and vacated in part a Board decision finding no clear and unmistakable error (CUE) in an RO decision denying disability compensation benefits and remanding a matter to the Board. 443 F.3d at 849-50. Our Court affirmed the Board's determination of no CUE as to the RO's finding that the presumption of soundness was rebutted. We reversed the Board determination of no error in the RO finding that the presumption of aggravation had been rebutted under the applicable regulation and remanded for the Board to determine whether the RO's error was outcome determinative. We vacated the Board's

denial of CUE and remanded for readjudication on the service-connection question. The appellant appealed to the Federal Circuit.

The parties in *Joyce* disagreed as to whether there was a single claim – one for service connection that is established either through the presumption of soundness or the presumption of aggravation – or two separate claims – one for service connection and one for aggravation. The Federal Circuit stated that it need not decide which view of the underlying claims was correct because under either view "there is a lack of finality." 443 F.3d at 849. The Federal Circuit concluded that if there is only a single claim, review by the Federal Circuit was unavailable because the remand order did not satisfy the test announced in *Williams v. Principi*, 275 F.3d 1361 (Fed. Cir. 2002), which held that the Federal Circuit may review a nonfinal remand order if three conditions were met. *Joyce*, 443 F.3d at 850. The Federal Circuit stated that if there were separate claims for service connection and aggravation, *Elkins*, 229 F.3d at 1376, was applicable, and the "assertedly separate claims are inextricably intertwined because both claim compensation for the same disability." 443 F.3d at 850. The Federal Circuit concluded that "[r]eview of the Veterans Court's decision as to the service connection claim is unavailable under *Elkins* because it would 'disrupt the orderly process of adjudication.'" *Id.*

We conclude that the Federal Circuit's decision in *Joyce*, similar to *Roebuck*, does not answer the question now before the Court. *Joyce* discussed the reviewability of decisions of this Court by the Federal Circuit. *Joyce* did not discuss the finality of a Board decision and the jurisdictional basis on which this Court reviews Board decisions. In *Joyce*, the Federal Circuit expressly noted: "Our review of decisions of the Court of Appeals for Veterans Claims is governed by 38 U.S.C. § 7292. While that statute does not explicitly impose a final judgment requirement, we have nonetheless 'generally declined to review nonfinal orders of the Veterans Court' on prudential grounds." 443 F.3d at 849 (quoting *Williams*, 275 F.3d at 1363). Accordingly, the Federal Circuit in *Joyce* did not review or interpret the statutes from which this Court derives its jurisdiction – 38 U.S.C. §§ 7252(a) and 7266(a). To the extent *Joyce* is argued to be instructive, it did not resolve the issue of one claim versus two claims, instead finding that either approach would yield the same result. And, it did not resolve the issue of whether a decision deemed final by the Board with regard to one claim or one theory supporting a claim for benefits, and for which notice of appellate rights had been provided to the claimant – but for which no appeal was filed within 120 days of that Board decision

11

– nevertheless could be appealed when the Board ultimately rendered a decision on the remaining claim or theory that might support an award of benefits.

#### 4. Elkins *and Administrative Finality*

In *Elkins*, the Federal Circuit provided guidance as to the applicable jurisdictional finality standard in the context of appeals from decisions that do not dispose of all claims but instead include a remand. *Elkins* established that judicial review is available for a claim for which final judgment has been entered even if other claims presented in the same appeal have been remanded. *Id.* The Federal Circuit in *Elkins* held that it had jurisdiction to review the veteran's headache claim and neck argument on appeal from our Court notwithstanding our remand of the veteran's back claim and notwithstanding the fact that all claims were related to the same accident and were presented to this Court in a single appeal. *Elkins*, 229 F.3d at 1374. This Court had affirmed the Board's denial of the headache claim and had rejected Mr. Elkins's argument that the medical evidence regarding his headaches also established a claim for service-connected neck pain. The Federal Circuit explained that in deciding that it could treat the claims as separable on appeal, it was adopting the approach in *Dewey Electronics Corp. v. United States*, 803 F.2d 650, 654 (Fed. Cir. 1986). The Federal Circuit stated that "[t]he relevant consideration, in determining whether an administrative adjudication is sufficiently 'final' is 'whether the process of the administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.'" *Elkins*, 229 F.3d at 1373 (quoting *Dewey*, 803 F.2d at 654). Applying this *Elkins* standard to an appeal from our Court, the Federal Circuit concluded that, because the legal issues presented on appeal were all distinct (i.e., whether Mr. Elkins had presented "new and material evidence" sufficient to reopen his claim for back injuries, whether he had presented a "well grounded" claim for headaches, and whether the medical reports furnished with his headache claim support a claim for neck injuries), its review of our Court's decision with respect to the headache and neck matters would not "disrupt the orderly process of adjudication below with respect to the remanded [back injury] claim." *Id.* at 1375-76.

In discussing its practice of treating a veteran's distinct issues as separable on appeal (and in allowing sequential appeals on separate issues or claims), the Federal Circuit in *Elkins* discussed its prior decisions regarding similar matters. *See Elkins*, 229 F.3d at 1374-75. The Federal Circuit

12

noted its prior holdings that a veteran's overall claim for benefits is comprised of separate issues and that our Court has jurisdiction to consider an appeal concerning one or more of those issues. *See, e.g.*, *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (elements of a claim may be appealed sequentially to U.S. Court of Appeals for Veterans Claims); *see also Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997) (holding that the U.S. Court of Appeals for Veterans Claims has jurisdiction to review a decision concerning one of the issues that comprise a claim, i.e., the issue of disability rating). The Federal Circuit stated that, unlike district court cases where a plaintiff must present all claims for relief arising from an event in a single complaint and then appeal all at once, "there is no requirement that a veteran's various claims for relief be simultaneously filed and adjudicated, either upon initial review or on appeal." *Elkins*, 229 F.3d at 1375. The Federal Circuit further stated: "Rather, we have recognized that the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal." *Id.*

Against this backdrop, we conclude that a final Board decision denying VA disability compensation based upon direct service connection, while the consideration of benefits based upon presumptive service connection is still under adjudication, constitutes a final decision subject to separate appeal to the Court.[3] Our conclusion is consistent with the recognition in *Elkins* that VA's "unique statutory process of adjudication" does not necessarily require different issues to be resolved all at once. *See Elkins*, 229 F.3d at 1375-76. In meritorious cases where the Board denies benefits based on a particular issue with distinct criteria and remands for further adjudication another issue of establishing entitlement to benefits, a veteran might otherwise have to wait years for resolution and possibly benefits to which he or she is entitled. Indeed, as illustrated by the circumstances in the instant case, it took VA *more than five years* after its decision denying direct service connection

---

[3] The Court recognizes the Federal Circuit's decision in *Bingham v. Principi*, 421 F.3d 1346 (Fed. Cir. 2005), which held that all theories of service connection were disposed of when the Board decision there had denied service connection. Unlike the factual circumstances presented in *Bingham*, however, where the Board denied a claim for service connection on one theory and was silent as to other theories of service connection, in the present case, the Board specifically remanded a separate theory for development, thereby foreclosing any argument that its denial of direct service connection could be interpreted as a final decision on the separate theory of presumptive service connection. *See also D'Aries v. Peake*, 22 Vet.App. 97 (2008) (exercising jurisdiction over appeal of Board decision that denied service connection for cause of veteran's death even while claim for DIC was denied in a separate Board decision and remanded in a separate Court decision); *Andrews v. West*, 16 Vet.App. 384 (1999) (table) (exercising jurisdiction over appeal of Board decision denying benefits based on direct service connection while benefits based on secondary service connection were still being adjudicated).

for a lung disability under section 1110 to complete the remand proceedings pertaining to entitlement to the presumption of service connection for undiagnosed illnesses incurred in, or manifested during a presumptive period following, service in the Persian Gulf under section 1117.

In addition, to require a final decision with respect to all claims for benefits, or theories in support of a claim for benefits – regardless of whether they raise distinct questions, are based on different statutory provisions, or rely on different causes of a disability – may have the unintended effect of encouraging the Board to delay making a determination on any matter until all matters are fully developed and ready for disposition. In such a case, if the Board decides one matter and remands another matter, when the remanded matter is later ready for the Board's disposition (after all instructions on remand have been fulfilled), the Board would be required to revisit its decision on the first matter to ensure that it currently complies with all law and regulations. It is unlikely that the Board will spend its resources adjudicating the first matter if that were the law, and the Board might very well decide that it would be more efficient to delay any adjudication until all claims for benefits, or theories in support of a claim for benefits, were ready for a decision. The veteran would thus be denied the opportunity of judicial review of an adverse decision until all issues addressed in the Board decision or all possible bases for supporting a claim for benefits have been finally decided. Such an outcome would serve neither the veteran nor the VA's interest in providing a timely award of benefits or achieving final resolution of claims.

*5. Reviewability Versus Finality of a Board Decision*

The Court recognizes that this Court's decision in *Harris* discussed this Court's jurisdictional statutory requirement of a "final Board decision" and the question of when a Board decision is appealable. 1 Vet.App. at 181-83. In *Harris*, the Court held that a Board decision that denied an increased rating for service-connected anxiety neurosis was not a final decision over which this Court had jurisdiction because the claim was "inextricably intertwined" with a claim for service connection for a heart disorder that the Board had referred to the RO. *Id.* at 183. The Court in *Harris* stated that it would neither review Board decisions "in a piecemeal fashion nor unnecessarily interfere with the [VA] deliberative process." *Id.* The Court stated:

> A decision by the RO to grant appellant's referred heart disorder claim could have a significant impact upon appellant's claims for an increased rating for anxiety neurosis. This, in turn, could render any review by this Court of the decision on the anxiety neurosis claim meaningless and a waste of judicial resources.

14

*Id.* at 183. Accordingly, the Court determined that piecemeal review could render a decision on one claim "meaningless" and would be a "waste of judicial resources." *Id.* The Court noted that the evidence in support of both claims was "replete with statements that the veteran's mental state was a result of his physical condition," and further noted that the crux of the appellant's claim for benefits was that "his heart disorder [was] the cause of his anxiety neurosis." *Id.* Because the claims appeared "so closely tied" together, the Court concluded that the Board decision did not constitute a final decision and dismissed the appeal for lack of jurisdiction. *Id.*

The *Harris* court determined that a holding by the Court that claims are inextricably intertwined – i.e., where a referred claim could have a significant impact on a denied claim that is being appealed – mandates dismissal of the appeal. The Court today overrules *Harris* to the extent it stands for the proposition that this Court has no jurisdiction over a Board decision that denied a claim if that claim is "inextricably intertwined" with another claim that the Board remanded. The Court has jurisdiction over such matters on direct appeal, but may decline to exercise its jurisdiction in such cases, as we frequently do. *See, e.g.*, *Hunt v. Nicholson*, 20 Vet.App. 519, 525-26 (2006) (declining to review denial of entitlement to vocational rehabilitation benefits and remanding for readjudication because issue was dependent on – "inextricably intertwined" with – whether, on remand, the Board reopens and grants a claim for service connection) (citing *Harris*, *supra*); *Anglin v. West*, 11 Vet.App. 361, 367 (1998) (remanding claim for a bladder disorder, for which there was medical evidence that it was connected to a back problem, because it was "inextricably intertwined" with a claim for a back condition that the Court was remanding) (citing *Harris*, *supra*); *Holland v. Brown*, 6 Vet.App. 443, 447 (1994) (holding that a Board decision denying an increased rating for service-connected rheumatoid arthritis is final even though Board referred to RO "a TDIU rating claim" based on rheumatoid arthritis because referred claim "may not necessarily affect the claim on appeal"). Overruling *Harris*, we now hold that where a Board decision purports to be a final decision, the Board issues a notice of appellate rights, and the appellant timely appeals to the Court, this Court has jurisdiction to review the Board decision for error. However, on review, the Court retains its discretion to determine at the threshold that a claim or theory denied by the Board in any such decision or portion of a decision on review is so inextricably intertwined with matters still

15

pending before VA that it should be remanded to VA to await development or disposition of a claim or theory not yet finally decided by VA.[4]

We make clear today, that this Court's *jurisdiction* to review a Board decision denying a claim is not controlled by whether the claim denied by the Board is "inextricably intertwined" with another claim that was either remanded or referred by the Board to the RO because the facts underlying the two claims are so closely tied together. Rather, this Court's jurisdiction is controlled by whether the Board issued a "final decision" – i.e., denied relief by either denying a claim or a specific theory in support of a claim and provided the claimant with notice of appellate rights. 38 U.S.C. § 7266(a); *see Percy v. Shinseki*, 23 Vet.App. 37, 45-46 (2009) (noting imprecise use of term "jurisdictional" in caselaw and VA regulations); *see also Bowles v. Russell*, 127 S. Ct. 2360, 2365-66 (2007) (defining as jurisdictional, limits in statute as to when and under what conditions a court may hear a case). We hold that only after the Court determines that it has jurisdiction does it then engage in consideration of questions concerning whether the appeal involves multiple claims or issues that are inextricably intertwined. If we find that the matter on appeal is inextricably intertwined with an issue or claim still pending before VA, the Court generally will decline, for reasons of judicial economy or on prudential grounds, to review the merits of the claim or issue adjudicated in the Board decision then before the Court, and remand it for further adjudication, as appropriate, with the other "inextricably intertwined" matters still being adjudicated below.

Following today's decision, a claimant will no longer be presented with the dilemma of whether he should appeal or risk having his right to appeal vitiated for failure to timely appeal. *See*, *e.g.*, *Gurley v. Nicholson* 20 Vet.App. 573, 575 n.1 (2007). It is not the Court's province to dictate how VA implements its statutory authority to dispose of appeals in a timely and efficient manner so long as it permissibly does so within controlling statutes. *See Ramsey v. Nicholson*, 20 Vet.App.

---

[4] Contrary to the view expressed by Judge Hagel in his separate opinion, we observe that this Court's decision in *Harris v. Derwinski*, 1 Vet.App. 180 (1991), is implicated, and its discussion necessary, regardless of whether this case involves one claim or two claims. Even if this Court were to hold that there are two claims involved here, *Harris* dictates that we determine, as part of this appeal, whether the "claim" for service connection for a lung condition on a direct basis that was denied in 1998 is "inextricably intertwined" with the "claim" for presumptive service connection for a chronic disability resulting from an undiagnosed illness based on service in the Persian Gulf. If so, *Harris* would not have permitted this Court to have jurisdiction over an appeal filed within 120 days of the 1998 denial but would permit jurisdiction *now* to review the 1998 denial as part of the current appeal of the denial of service connection under the presumptive provisions for Persian Gulf War veterans. Because a determination as to whether claims are inextricably intertwined does not properly determine this Court's jurisdiction, we overrule that aspect of *Harris*.

16

16, 27 (2006) ("The general authority of the Secretary to interpret and apply the relevant law and of the Board to dispose of appeals in a timely manner authorizes the Secretary to manage the Board in its dispositions of cases and to consider the relevant law in its control of the dispositions of the appeals pending on the Board's docket and to do so with economy of time and effort.").

While it does not fall to this Court to design or redesign the VA adjudication process, it is our province to consider a timely appeal from a claimant who has been denied relief based on one theory, has received notice of his appellate rights, and who argues that the Board erred in issuing the denial. *See*, *e.g.*, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976) (Stewart, J., joined by Blackmun and Stevens, JJ., dissenting) ("[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"). In such a case, the Court can then determine whether the benefits denied or limited are inextricably intertwined with a remanded issue or claim, or whether the Board erred in issuing the denial or limitation of benefits that was appealed. Parties are well-served by a process that allows the Court to review assertedly final decisions to determine (1) whether one issue on which the Board denied benefits is inextricably intertwined with other issues that the Board remanded, and (2) whether such a Board decision should be reversed, modified, or the matter remanded, based on Board error, including misapplication of the law, failure to develop a complete record, or other defects that would otherwise not be addressed for years thereafter. By a veteran's timely exercise of appellate rights, errors by the Board may be corrected as early in the process as possible, rather than many years later, when remand proceedings on a separate matter are completed. Claimants not satisfied with a clear, final decision of the Board, accompanied by notice of their appellate rights, should appeal any such decision in a timely manner (or request Board reconsideration) to preserve those appellate rights. A claimant should understand that "Board denial" on the issues coupled with a notice of appellate rights means "file an appeal or the denial becomes final," because it is in the control of the claimant, not the Court or the Secretary, whether to appeal once the Board issues its decision. If an appeal is filed, the Court will determine issues of finality and whether the issues or claims are inextricably intertwined on a case-by-case basis. Failure of a claimant to appeal (or seek reconsideration) presents the risk, as we see in the case before us, that the matters finally decided by the Board will not be appealable after the time to appeal passes.

17

B. The Finality of the September 1998 Board Decision

In the September 1998 decision, the Board considered the issues of appellant's entitlement to benefits for a lung disability based either directly or through the presumption of service-connection under section 1117. The Board took two actions with respect to his appeal for benefits. First, the Board denied benefits based on entitlement to service connection on a direct basis. R. at 272 ("The claim for entitlement to service connection for a lung disorder on a direct basis is denied."). The Board determined that there was "no competent medical evidence linking the veteran's current lung disorder on a direct basis to service" (R. at 267), and thus found that issue not "well-grounded"[5] (R. at 267, 271). Second, the Board remanded, for further development, entitlement to service connection under 38 U.S.C. § 1117 for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, secondary to Persian Gulf War service. R. at 272. The Board stated that it was "unclear whether there [was] medical evidence to support the veteran's claimed respiratory symptoms or whether any of the symptoms are affiliated with a diagnosed illness" and directed the RO to schedule a VA Persian Gulf examination. R. at 273-74.

At the time of the 1998 decision, the Board considered its denial final and so notified the appellant. At the time the Board issued its September 1998 decision, the Board notified the appellant as follows:

> NOTICE OF APPELLATE RIGHTS: Under 38 U.S.C.[] § 7266 . . . , a decision of the Board of Veterans' Appeals granting less than the complete benefit, or benefits, sought on appeal is appealable to [the Court] within 120 days from the date of mailing of notice of the decision, provided that a Notice of Disagreement concerning an issue which was before the Board was filed with the agency of original jurisdiction on or after November 18, 1988. . . . The date that appears on the face of this decision constitutes the date of mailing and the copy of this decision that you have received is your notice of the action taken on your appeal by the Board of Veterans' Appeals. Appellate rights do not attach to those issues addressed in the remand portion of the Board's decision, because a remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (1997).

---

[5] The law in effect in 1998 provided that claims must be "well grounded" in order to invoke VA's duty to assist in their development. *See* 38 U.S.C. § 5107. The Veteran's Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), amended section 5107 to eliminate the requirement of well-groundedness. *See Luyster v. Gober*, 14 Vet.App. 186 (2000) (per curiam order).

R. at 275-76. As quoted above, the Board specifically noted that the appellate rights did not attach to the matter that was remanded, which constituted only a "preliminary" decision of the Board, and that a remand "does not constitute a decision of the Board on the merits of your appeal." R. at 276. The Board's notice, therefore, informed the appellant that the appellate rights pertained to the Board's denial of service connection for a lung disability on a direct basis, as the matter that was not remanded. R. at 276. This is consistent with the Court's caselaw that the Board's remand of a veteran's claim is not an adverse final decision over which the Court had jurisdiction. *See Acosta v. Principi*, 18 Vet.App. 53, 59 (2004); *Breeden*, 17 Vet.App. at 475. The appellant was thus on notice that VA considered the September 1998 decision of the Board to be a final decision on direct service connection for a lung disability. The Court notes that the appellant does not raise any argument that challenges either the sufficiency of the notice of appellate rights accompanying the Board decision or his receipt of that decision or his receipt of the notice of appellate rights. *See* App. Br. at 1-16; Reply Br. at 1-7.

The appellant did not file an NOA of the Board's September 1998 decision within 120 days of the date that VA mailed notice of the September 1998 decision to him nor did he seek reconsideration from the Board. *See Reed v. Peake*, 23 Vet.App. 64 (2008) ("The only exception to this 120-day rule is in those cases in which the claimant has (1) filed a motion for Board reconsideration within 120 days after the mailing date of the Board's decision; and then (2) filed an NOA within 120 days after the Board Chairman has denied the reconsideration motion); *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991). Just as an appellant has an obligation to cooperate in the development of evidence pertaining to his claim because failure to do so could subject him to the risk of an adverse adjudication based on an incomplete and underdeveloped record, *see Kowalski v. Nicholson*, 19 Vet.App. 171, 178 (2005), failure to appeal a purportedly final Board decision may adversely affect an appellant if the Court agrees that the decision is final and therefore we have no jurisdiction over the claim. Thus, as stated above, veterans who receive a purportedly final decision denying benefits from the Board should timely appeal that denial, regardless of whether other claims or issues remain pending, or they run the risk of finding years later that in failing to appeal they have thereby forfeited their appellate rights concerning the earlier decision. Here, rather than protecting his appellate rights at the time of the 1998 Board decision, the appellant waited and only filed an

19

NOA after the April 2004 Board decision. He now argues that the September 1998 decision was not final (App. Br. at 5), but that argument is not persuasive.

Based on the totality of the circumstances of this case, the Court holds that the September 1998 Board decision was final concerning the issue of section 1110 compensation for direct service connection for a lung disability. *See Bingham*, 421 F.3d at 1349 ("We cannot create a third exception to the rule of finality."); *Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc) (recognizing only two statutorily recognized exceptions to the rule of finality, neither of which are applicable here). Because the appellant did not file an NOA within 120 days after VA mailed notice of the Board's final September 1998 decision, the Court lacks jurisdiction to review the September 1998 Board decision. *See* 38 U.S.C. § 7266(a).[6] The Court is thus limited to a review of the merits of the April 2004 Board decision denying service connection on a presumptive basis for symptoms of a chronic disability resulting from an undiagnosed illness from military service in the Persian Gulf.

## C. Merits of the August 2004 Board Decisions

With regard to the April 2004 Board decision, the appellant argues only that the Board erred because it had a duty, under 38 C.F.R. § 19.9, to seek clarification of Dr. Plump's December 2001 medical opinion "before[,] or in addition to," ordering an additional VA medical examination. App. Br. at 10. He contends that, in ordering an additional VA medical examination in lieu of seeking clarification of Dr. Plump's opinion, VA violated its duty to assist. App. Br. at 10-12. At oral

---

[6] In viewing the September 1998 Board denial as a nonfinal decision, our colleagues, Judges Lance and Schoelen, read our panel decision in *Roebuck* as creating a new exception to the rule of finality that is inconsistent with established precedent. *See Cook*, 318 F.3d at 1337 (discussing two statutory exceptions to the rule of finality: (1) a finding of clear and unmistakable error under 38 U.S.C. 5109A or 7111, and (2) the receipt of new and material evidence to reopen a claim under section 5108); *see also Knowles v. Shinseki*, 571 F.3d 1167 (2009) (noting that "the law does not recognize a freestanding 'finality claim' filed after the period for direct review has expired"). Contrary to this view, we observe that if Mr. Tyrues believed that the Board had erred in 1998 in denying him relief under a direct theory of service connection, his avenue to remedy that error was to file a direct appeal of the 1998 Board decision and argue for a remand to correct any errors, including any error in adjudicating the matter or in not remanding the matter for further development. Moreover, the dissent ignores our caselaw in which this Court reviews a Board decision and determines whether a matter decided by the Board is inextricably intertwined with a matter remanded to the Agency. *See*, *e.g.*, *Bagwell v. Brown*, 9 Vet.App. 337, 339-40 (1996). In addition, our colleagues' current view is difficult to reconcile with their recent opinion in *Brokowski v. Shinseki*, 23 Vet.App. 79, 86-90 (2009) (exercising jurisdiction and affirming Board decision as to effective date issue even though Board had remanded the issue of an appropriate disability rating). Significantly, the dissent's current view disregards the Court's role in providing prompt judicial review of Board decisions that deny relief to veterans and would have this Court's role reduced to a small, flickering light of hope at the end of the seemingly endless processing tunnel that often characterizes VA adjudications.

20

argument, counsel for the appellant asserted that VA's request for an additional medical examination "impermissibly narrowed" VA's consideration of Dr. Plump's December 2001 opinion and that the appellant was prejudiced by VA's failure to seek clarification of Dr. Plump's opinion because his opinion was favorable evidence that, if clarified, could have substantiated the appellant's claim for service connection on a presumptive basis for symptoms of an undiagnosed illness.

The Board's CDU noted that in providing the December 2001 VA medical opinion, Dr. Plump "found that the veteran suffered from a known diagnosis of mild chronic bronchitis, but offered an opinion that the veteran's 'shortness of breath due to undiagnosed illness [was] at least as likely as not due to his Gulf War service.'" R. at 365. The CDU concluded that because "these findings appear to be inconsistent, another examination must be scheduled." *Id*. The CDU then ordered that VA schedule the appellant for a VA Persian Gulf examination and indicated that the appellant "must be scheduled with an examiner other than the examiner of 12/13/01, Dr. Plump." *Id*.

> At the time of the CDU's July 2002 request, § 19.9 provided, in relevant part:
>
> (a) *General*. If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a Board Member or panel of Members may:
> > (1) Remand the case to the agency of original jurisdiction, specifying the action to be undertaken; or
> > (2) Direct Board personnel to undertake the action essential for a proper appellate decision.

38 C.F.R. § 19.9 (2002). The plain language of § 19.9 does not limit the Board to seeking clarification of the evidence, nor has the Court adopted the "mandatory clarification" interpretation of § 19.9 that the appellant advances in his brief. Rather, the regulation contemplates situations in which the Board may choose to obtain "further evidence" instead of requiring clarification of the existing evidence; and, it is well established that the Board has the discretion to determine whether further development is needed to make a decision on a claim. 38 C.F.R. § 19.9(a) (2002); *see Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002); *Winsett v. West*, 11 Vet.App. 420, 426 (1998) ("[W]hether the Board chooses to refer a particular case for an independent medical opinion is entirely within its discretion."); *see also* 38 U.S.C. § 7109(a) (the Board may seek an advisory medical opinion when such an opinion "is warranted by the medical complexity or controversy

21

involved"); 38 C.F.R. § 3.304(c) (2009) ("The development of evidence in connection with claims for service connection will be accomplished when deemed necessary.").

However, it is equally well established that VA must develop claims and gather evidence in a neutral manner. *See Austin v. Brown*, 6 Vet.App. 547, 553 (1994) ("[B]asic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner."). In seeking a medical opinion, VA "may not suggest an answer or limit the field of inquiry by the expert." *Bielby v. Brown*, 7 Vet.App. 260, 268 (1994); *see Colayong v. West*, 12 Vet.App. 524, 534 (1999) (holding that the RO's request to a VA medical examiner to "feel free to refute the private physician's report" was fatally flawed and compromised the fairness of the adjudication process). Moreover, "VA may not pursue . . . development if the purpose is to obtain evidence against the claim." *Hart v. Mansfield*, 21 Vet.App. 505, 508 (2007); *see Mariano v. Principi*, 17 Vet.App. 305, 312 (2003) ("Because it would not be permissible for VA to undertake such additional development if a purpose was to obtain evidence against an appellant's case, VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose."); *Rose v. West*, 11 Vet.App. 169, 172 (1998) (noting that "it is not the function of judicial review simply to accord the government a remand to obtain . . . evidence" that rebuts the appellant's showing of a nexus between his in-service injury and a current diagnosed disability).

In its April 2004 decision, the Board found that VA "ha[d] made reasonable and appropriate efforts to assist the appellant in obtaining the evidence necessary to substantiate the claim currently under consideration, to include several VA examinations." R. at 4. With regard to Dr. Plump's December 2001 medical opinion, the Board noted "that despite the finding of an undiagnosed illness relating to respiratory symptomatology, it is noteworthy that the examiner did indeed offer a specific diagnosis of mild chronic bronchitis." R. at 11. The Board found that "[a] diagnosis of both an undiagnosed illness and a diagnosed condition pertaining to the same symptoms is inconsistent." R. at 11-12.

Dr. Plump rendered the following opinion in December 2001:

DIAGNOSIS: 1) Mild chronic bronchitis. 2) Diffusion capacity and spirometry within normal limits. 3) Refractory pneumonia March 1994.

22

OPINION: It is this provider's medical opinion that the patient's shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service. This provider is unable to render an opinion as to the etiological basis of the disorder and its date of onset.

R. at 350.

Accepting the Board's view that Dr. Plump's diagnosis and opinion are inconsistent,[7] it is wholly unclear why the Board directed that VA provide a new medical examination, rather than simply seek clarification of Dr. Plump's opinion. It is equally unclear why the Board directed that the new examination be provided by an examiner "other than" Dr. Plump. R. at 365.

The Board's failure to adequately explain the reasons for its order leaves the Court to speculate as to its reasoning; such speculation reasonably includes the possibility that the purpose was to avoid a possible favorable opinion from Dr. Plump. This is not permitted. *See Austin*, *supra*; *see also Hart*, *Mariano*, and *Rose*, all *supra*. Under these circumstances, the Board's statement of reasons or bases is inadequate. *See Mariano*, 17 Vet.App. at 312 ("VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose."); *Caluza*, 7 Vet.App. at 506 (the Board's statement of the reasons or bases for its decision must "account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value" of the evidence, and "provide the reasons for its rejection of" any material evidence favorable to the appellant). The Board's rejection of Dr. Plump's December 2001 VA medical opinion, without seeking clarification or adequately explaining why such clarification was unnecessary, frustrates appellate review. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (the Board's statement of the reasons or bases for its decision "must be adequate to enable a claimant to understand the precise

---

[7] Although the Board's view is that Dr. Plump's opinion is inconsistent with his diagnosis, the Court notes that it is also possible that Dr. Plump intended to diagnose the appellant as having both mild chronic bronchitis and an undiagnosed illness manifested by shortness of breath. Pursuant to 38 U.S.C. § 1117, governing compensation for disabilities occurring in Persian Gulf War Veterans, compensation is available for either an undiagnosed illness or a "medically unexplained chronic multisymptom illness," manifested by "signs or symptoms involving the upper or lower respiratory system." 38 U.S.C. § 1117(a)(2)(B), (g)(8). Dr. Plump's opinion therefore need not be read as inconsistent. Read as diagnosing the appellant as having both chronic bronchitis and an undiagnosed or "medically unexplained" illness, Dr. Plump's opinion would be favorable evidence in support of the appellant's claim for service connection for an undiagnosed illness.

basis for the Board's decision, as well as to facilitate review in this Court").  Accordingly, remand is necessary.

On remand, and given the Board's view that Dr. Plump's diagnosis and opinion are inconsistent, the Board either must seek clarification of Dr. Plump's December 2001 medical opinion indicating that the appellant had an undiagnosed illness manifested by shortness of breath resulting from Persian Gulf service; or, the Board must provide a well-reasoned statement, adequate to facilitate the Court's review, explaining its decision not to seek such clarification.  The Board must further ensure that VA has complied with the notice requirements of 38 U.S.C. § 5103(a). *See Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) (holding that section 5103(a) notification is not satisfied by an aggregation of pre- and postdecisional notices from which a claimant might have been able to infer what evidence VA found lacking).  On remand, the appellant is free to submit additional evidence and to raise his arguments to the Board, and the Board is required to consider them.  *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

### III.  CONCLUSION

Based on the foregoing analysis and a review of the record on appeal, the Board's April 7, 2004, decision is VACATED and the appellant's claim for presumptive service connection for an undiagnosed chronic condition alleged to be the result of service in the Persian Gulf under 38 U.S.C. § 1117 is REMANDED for further proceedings consistent with this decision.  The appellant's appeal as to matters finally decided in the September 1998 Board decision is DISMISSED for lack of jurisdiction.

KASOLD, *Judge*, concurring: I fully concur in the well-reasoned opinion of the Court and I write separately only to highlight the following three points:

1.  <u>The Court's Opinion Is Consistent With Our Precedent and Jurisdictional Statute</u>.

Any suggestion that the opinion today is in some way a shift from our prior caselaw regarding finality of Board decisions – based on one theory of service connection while another theory is remanded for further adjudication – is without merit.  Specifically, the Court historically has considered that a Board decision denying benefits for a disability based on one particular theory,

24

while another theory is still being developed below, to be final for purposes of appeal and the Court's jurisdiction over an appeal. *See, e.g.*, *Rice v. Shinseki*, 22 Vet.App. 447 (2009) (exercising jurisdiction over an appeal of a Board decision that denied an earlier effective date for TDIU even though Board remanded the matter of an initial rating for PTSD; Court exercised its discretion to decline review of the merits and vacated the Board's decision as to TDIU because the matter was not fully developed, and remanded the matter for readjudication subsequent to adjudication of the initial rating for PTSD); *D'Aries v. Peake*, 22 Vet.App. 97 (2008) (exercising jurisdiction over appeal of Board decision that denied service connection for cause of veteran's death even while claim for DIC was denied in a separate Board decision and remanded in a separate Court decision); *Andrews v. West*, 16 Vet.App. 384 (1999) (table) (exercising jurisdiction over appeal of Board decision denying benefits based on direct service connection while benefits based on secondary service connection were still being adjudicated).

The Court also has bifurcated a claim, affirming parts of a Board decision related to a claim for benefits while remanding for further adjudication other matters stemming from the same decision. *See, e.g.*, *Barringer v. Peake*, 22 Vet.App. 242 (2008) (affirming Board decision with regard to schedular ratings and effective date and remanding for adjudication of extraschedular consideration); *Palczewski v. Nicholson*, 21 Vet.App. 174 (2007) (affirming denial of service connection for hearing loss while remanding for readjudication with regard to tinnitus); *Harder v. Brown*, 5 Vet.App. 183 (1993) (affirming Board decision denying the reopening of a claim based on right-knee disability based on direct service connection, and reversing denial based on secondary service connection and remanding for further adjudication).

There are only two exceptions to our having jurisdiction over Board decisions that are final with regard to a matter, and for which notice how and when to appeal has been provided: *Harris v. Derwinski*, 1 Vet.App. 180 (1991), and *Roebuck v. Nicholson*, 20 Vet.App. 307 (2006). In *Harris*, the Court held that when the matters remanded are inextricably intertwined with another matter for which the Board denied benefits and stated its decision was final, the Court lacked jurisdiction to hear an appeal over the matter declared final by the Board. 1 Vet.App. at 183. Today, we correctly overturn that part of *Harris* and hold that we do indeed have jurisdiction over a Board decision that denies benefits when the Board states its decision is final and that decision is timely appealed. However, the Court may, for reasons of judicial economy, nevertheless remand such a decision for

adjudication with the matter still under administrative adjudication if the matters are inextricably intertwined. *Id*.; *see also Gurley v. Nicholson*, 20 Vet.App. 573, 576 n.3 (2007) (recognizing the dilemma a claimant faces with the question whether to timely appeal a Board decision, or risk having his right to appeal vitiated for failure to timely appeal).

The other exception is implicitly raised by *Roebuck*, which, as noted *ante* at 16, involved a unique set of circumstances such that the Court concluded that the Board decision denying a matter was not final despite the Board's decision stating it was final and the fact the claimant had been provided notice how and when to appeal. Although I concur that *Roebuck* can be distinguished from our precedential cases where the Court had jurisdiction over final Board decisions for which notice of appellate rights has been provided, it must be recognized that *Roebuck* is indeed an exception thereto. Any characterization that today's opinion establishes a new concept of finality elevates the recent single panel decision in *Roebuck*, rendered on exceptional circumstances, above the consistent understanding of this Court's jurisdiction in the nonexceptional circumstances where the Board renders a final decision on one theory supporting a claim for benefits and remands for further adjudication that part of the claim that is based on another theory that could support an award of benefits.

2. Assertions that Evidence on Direct Service Connection Was Not Fully Developed at the Time of the 1998 Board Decision Are Speculative.

One of the concurring opinions suggests that the September 1998 Board decision that denied Mr. Tyrues's direct service-connection claim for lung disability could have been based on evidence that was not properly and fully developed; however, readers should note that this allegation is unsupported by reference to any facts; it is pure speculation. Moreover, the very suggestion of inadequate development reinforces the fact that Mr. Tyrues should have appealed the 1998 decision in a timely manner if he was not satisfied with it, so that effective appellate review could be conducted. Review of a decision rendered over 10 years ago certainly ignores the mandate from Congress that an appeal of a final Board decision be taken within 120 days of that decision. 38 U.S.C. § 7266.

3. Our Jurisdiction Is Predicated on Final Board Decisions Adversely Affecting a Claimant.

Although the Court has tried to define a "claim" for all purposes, *see Rice*, 22 Vet.App. at 451, any such effort is fruitless. Our jurisdiction is over final Board decisions affecting benefits.

26

38 U.S.C. §§ 7252, 7266; *see, e.g.*, *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000). Nothing in statute or caselaw limits our jurisdiction to final decisions on claims, or otherwise defines the context of our jurisdiction over final Board decisions on all aspects of a claim. Can it reasonably be argued that the denial of benefits for a disability based on one theory is not a final Board decision affecting benefits? A veteran might very well be entitled to benefits based on the theory denied by the Board, and to require him to wait 10 or more years to appeal that decision is wholly contrary to our statutory jurisdiction, which is the "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals" when a final decision is appealed by "a person adversely affected by such decision" within 120 days of the mailing of the decision. 38 U.S.C. §§ 7252 and 7266.

Moreover, as we recently held in *Clemons v. Shinseki*, claimants seek benefits for disabilities as they perceive them based upon particular symptoms, not based upon a particular medical term causing the perceived disability. 23 Vet.App. 1, 4 (2009). The requirement to liberally construe a claim, and the recognition that claimants generally are not competent to provide opinions as to diagnoses that require medical training, compel the Secretary to view and develop a claim for benefits based on the reported symptoms and not just a particular, unconfirmed "diagnosis," On the other hand, the requirement to liberally construe a claim for benefits in no way constrains the Secretary from processing the claim based on different theories or diagnoses. Indeed, the Federal Circuit has held that a claim for benefits finally denied as to one medical cause, is to be treated separately from a subsequent claim for benefits based on a different medical cause, even when the disability as perceived by the veteran is the same, such as a hearing loss that is sensorineural as opposed to conductive. *Boggs v. Peake*, 520 F.3d 1330, 1337 (Fed. Cir. 2008).

Thus, a "claim" seeking benefits – i.e., a claim for benefits for whatever a veteran suffers from – is different from a "claim" denied – i.e., the denial of benefits based on one specific medical diagnosis differs from a later submitted "claim" for benefits based on a different medical diagnosis. Otherwise stated, what constitutes a "claim" differs depending on what stage in the administrative process one is attempting to define a claim – at the stage when a "claim" is filed, or at the final stage when a "claim" is denied. With regard to our jurisdiction, however, it should not be overlooked that it is premised on a final Board decision affecting benefits, and not on what constitutes a claim at any given time in the adjudication process below.

27

As succinctly stated in the Court's opinion, when the Board renders a final decision on a matter affecting benefits, and a claimant is provided a copy of that decision and notice how and when to appeal it, the failure to timely file an NOA precludes this Court from having jurisdiction over that decision. This is what the law states, and it is the basic holding of the Court's decision today.

HAGEL, *Judge*, concurring in the result, dissenting in part: I concur in the majority's ultimate conclusion that we do not have jurisdiction to review the September 1998 Board decision. However, I write separately because I believe that our lack of jurisdiction stems from entitlement to service connection for a chronic lung disorder being a separate and distinct claim for VA compensation from entitlement to service connection for Persian Gulf Syndrome under 38 U.S.C. § 1117. The majority chooses not to decide this issue and in doing so further confuses this Court's caselaw with the interchangeable use of the terms "issue," "matter," and "claim" without a clear definition of those terms.

Although the majority states that it is unnecessary to decide whether Mr. Tyrues has presented one claim or two, its analysis stems from the proposition that Mr. Tyrues has presented a single claim for benefits based on a lung condition. The majority regards Mr. Tyrues's joint pain, stomach pain, and memory loss symptoms as only ancillary to the lung condition. Such analysis is facilitated by the mostly interchangeable use of the terms "issue," "matter," and "claim" without specifically stating to what each terms refers. This lack of precision will, in my view, result in fuzzy decisions in the future, especially when used in an opinion by the full Court.

The majority's decision includes language such as, "a Board decision denying VA disability compensation on one *issue*, while another *issue* is still under adjudication." and "the Board denies benefits based on a particular *issue* with distinct criteria and remands for further adjudication another *issue* of establishing entitlement to benefits" without explaining what an "issue" is–namely whether it is a claim for benefits or theory of entitlement to benefits. *Ante* at 13 (emphasis added). The majority later refers to a potential situation where "the Board decides one *matter* and remands another *matter*," again without explaining the meaning of "matter." *Id*. at 14 (emphasis added). By using the terms interchangeably, the majority is able to avoid using the more appropriate terms "claim" and "theory," and, thus, is able to avoid deciding the central issue raised by Mr. Tyrues on

28

appeal and briefed by the parties–that is, whether the facts in this case define one claim or two and, if two, the effect of this Court's decision in *Roebuck*.

"Claim" has been defined by VA in 38 C.F.R. § 3.1(p) (2009), as "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit." Further, in *Roebuck v. Nicholson*, the Court adopted the definition of "claim" applied by the Federal Circuit in *Schroeder v. West*, and determined that a claim is an application for entitlement to a VA benefit based on a current disability. *Roebuck v. Nicholson*, 20 Vet.App. 307, 312-13 (2006); *see Schroeder v. West*, 212 F.3d 1265, 1269 (Fed. Cir. 2000). The *Roebuck* Court also recognized, in line with the Court's holding in *Bingham v. Principi*, that although there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim. *Id*. at 313; *see Bingham v. Principi*, 18 Vet.App. 470, 474 (2004) *aff'd sub nom. Bingham v. Nicholson*, 421 F.3d 1346 (Fed. Cir. 2005). The Court should therefore apply this definition of "claim" to the facts in the instant appeal. Applying that definition to the facts in this case, Mr. Tyrues has two separate claims for VA benefits. To fully explain my reasoning, it is necessary to provide a more extensive recitation of the relevant facts than is provided by the majority.

In March 1995, shortly after being hospitalized for pneumonia, Mr. Tyrues amended a prior claim for VA benefits to include entitlement to benefits for a lung disability. In support of his claim he submitted medical records that refer to both pneumonia and bronchitis. His claim for benefits for a lung disorder was initially denied. Mr. Tyrues appealed that denial to the Board.

In December 1996, Mr. Tyrues appeared at a hearing before a Board member. At this hearing, he discussed his lung condition, including coughing and congestion, which he stated was incurred in service based on his exposure to dust, fumes, and kerosene. Mr. Tyrues stated that, since returning from the Persian Gulf, he has been diagnosed with pneumonia three or more times as well as a lung infection or a growth on his lung. After the Board member stated that he had no further questions, Mr. Tyrues's representative asked Mr. Tyrues whether he had anything to add before concluding the hearing. In response, Mr. Tyrues stated that he had been reading about symptoms that were being experienced by other soldiers who had served in the Persian Gulf and that he had

noticed that he too was developing these symptoms, including soreness and aching in his joints. In response to Mr. Tyrues's description, the *Board* member stated:

> That's not really relevant now. I would advise you, there is what we call a Persian Gulf syndrome, things, now I, I would, if I were you get a hold of Mr. Weatherly here and you guys could *work up a claim* because that's an area right now which the law is changing rather rapidly and there is a distinct possibility you can get service connected for some of these things because, like I said, it, it is in the process right now of developing and *I would certainly file a claim* for it.

R. at 147 (emphasis added.) The Board member further stated that Mr. Tyrues did not currently have such a claim, but that he should file a claim based on the symptoms that he was describing. The Board member again stated: "[T]he whole process starts with you filing a claim and identifying what you feel are the symptoms related to this and [what] the Persian Gulf syndrome symptoms are, there's a wide variety of them . . . ." *Id*. Six days later, in apparent response to the suggestion from the Board member, Mr. Tyrues submitted a statement in support of claim, stating that he wanted to amend his claim "to include aching joints, memory loss, and stomach condition caused from [his] Persian Gulf service." R. at 159.

In March 1997, the Board remanded his claim for benefits for a lung disorder back to the regional office, which sent Mr. Tyrues a letter, on March 19, 1997, notifying him that he could submit additional evidence with respect to that claim. In April 1997, VA sent Mr. Tyrues a notice letter regarding his *newly filed "claim* for disability benefits based on Persian Gulf War service." R. at 163 (emphasis added). The letter requested that Mr. Tyrues submit medical and non-medical evidence to support his claim. In response, Mr. Tyrues submitted lay statements from his wife, a coworker, and a fellow soldier who served with him in the Persian Gulf and who, at that time, worked with him at home. The letter from his coworker referred to Mr. Tyrues experiencing flu and cold symptoms upon returning from service. Mr. Tyrues's fellow soldier and current coworker also stated that after returning from duty, Mr. Tyrues missed work "because of flu, colds, complaints of aching joints, and soreness in his body." R. at 172. He further stated that Mr. Tyrues could not work as a result of the pain in his body. Mr. Tyrues's wife stated that her husband experienced constant joint pain, numbness, inability to move after sleeping, flu-like symptoms, and a propensity to experience colds.

An April 4, 1997, VA Compensation and Pension Examination worksheet mentions two claims, one claim for benefits for a lung disorder being remanded from the Board and another claim for benefits for aching joints, memory loss, and a stomach condition, but notes that both claims are related to service in the Persian Gulf. In May 1997, Mr. Tyrues underwent a VA examination, which appears to relate his lung condition to his service in the Persian Gulf. The examiner also diagnosed him with "possible Gulf War Syndrome with shortness of breath, joint pain, [and] memory loss." R. at 191. Following a request by VA for authorization to obtain records, VA received records from Dr. Arnold, which stated that Mr. Tyrues experienced significant lower back pain, manifested as "a dull aching pain with intermittent sharp component on movement." R. at 212. Later records show Mr. Tyrues sought treatment for joint pain in his right shoulder, lumbar strain, flu-like symptoms, morning stiffness in his joints, generalized joint pain, coughing, and a sore throat. VA also received medical records from Dr. Mitchum, which also revealed that Mr. Tyrues experienced chronic back pain, pneumonia, and bronchitis.

On April 20, 1998, the regional office issued a Supplemental Statement of the Case, stating that it was continuing to deny entitlement to VA benefits for a lung disorder. On the same day, the regional office issued a decision that addressed four issues: A denial of entitlement to service connection for a lung condition (noted as a remanded issue) and denial of the three other conditions, including joint pain, memory loss, and a stomach condition (noted to be new issues and all attributed to an "undiagnosed illness"). R. at 241. Mr. Tyrues, referencing the April 1998 Supplemental Statement of the Case, which denied only entitlement to VA benefits for a lung condition, appealed to the Board. Indeed, the brief submitted by his representative to the Board on appeal clearly stated that the "question at issue" on appeal was "entitlement to service connection for a lung disorder." R. at 261. In this brief, Mr. Tyrues's representative referred only to Mr. Tyrues's claim for benefits for a lung disorder and that claim's previous procedural history.

In September 1998, the Board denied service connection for a lung disorder. The Board, referring to the April 1998 rating decision, also remanded the "issue of entitlement to service connection [] for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, claimed as secondary to Persian Gulf War service." R. at 266. Although the Board discussed some of the same evidence, it referred to *two* claims, a claim for entitlement to service connection for a *lung disorder* on a direct basis and a claim for entitlement to service connection for a *chronic*

*disorder*, due to an undiagnosed illness. With regard to the chronic disorder, the Board ordered VA to provide Mr. Tyrues with a new medical examination, which was provided in December 1998.

In February 2000, the Board denied Mr. Tyrues's claim for benefits for "shortness of breath as a chronic disability resulting from an undiagnosed illness." R. at 313. The decision was subsequently remanded by the Court pursuant to the parties' joint motion for a remand for VA to provide Mr. Tyrues with a new medical examination. In December 2001, Mr. Tyrues underwent another VA examination, at which the examiner stated that Mr. Tyrues's shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service." R. at 350. That examiner also diagnosed Mr. Tyrues with "mild chronic bronchitis." *Id*. In July 2002, the Board's Case Development Unit found that these two diagnoses appeared to be inconsistent and ordered another examination, requesting the examiner diagnose Mr. Tyrues with a particular disorder or indicate that his symptoms were the result of an undiagnosed illness. In October 2002, a VA examiner found that Mr. Tyrues did not have any respiratory problems at that time and that any previous problems are related to allergies and not related to his Gulf War service. In April 2004, the Board denied his claim for benefits for a respiratory/ lung disorder as a chronic disability resulting from an undiagnosed illness.

These facts reveal that Mr. Tyrues was advised by a member of the *Board*, to file a *claim* for benefits for *Persian Gulf Syndrome*. Although the majority's description of this person as a "hearing officer" is not incorrect, such a description does not convey the authority with which this statement was made. *See* 38 C.F.R. § 3.103(c)(2)(2009). Certainly a Board member understands the difference between additional symptoms of a disability for which benefits have already been claimed and a claim for benefits based upon a separate disability. The Board member specifically advised Mr. Tyrues to submit a "claim" to the agency of original jurisdiction. R. at 147. The use of such terminology by the Board serves to illustrate the problems associated with the majority's undefined use of "issue," "claim," and "matter." Further, from the time that Mr. Tyrues amended his claim in 1996 to include entitlement to VA benefits for aching joints, memory loss, and stomach condition caused by his Persian Gulf service until the Board issued its September 1998 decision remanding that claim, VA had considered, developed, and adjudicated his claims for benefits for a lung condition and for a chronic disability resulting from service in the Persian Gulf separately. Although the majority states that it need not decide the issue of whether Mr. Tyrues presented one claim or

two, it must consider the claims as one in order to proceed to its discussion of *Harris* and *Roebuck,* the two issues the majority appears bound to reach. In so doing, the majority treats Mr. Tyrues as having filed a single claim for a lung disorder based on two theories of entitlement to service connection, a direct basis under 38 U.S.C. § 1110 and a presumptive basis under 38 U.S.C. § 1117. However, in doing so, the majority fails to explain why Mr. Tyrues's claim for VA benefits for a chronic disorder, characterized by a collection of symptoms described as aching joints, memory loss, a stomach condition, and shortness of breath caused by an undiagnosed illness is part of a claim for benefits for a single lung disorder.

As stated above, when Mr. Tyrues initially described his symptoms at the December 1996 Board hearing, the Board member informed him that he needed to file a new claim for benefits for Persian Gulf syndrome, which he subsequently did. Upon receipt of his new claim, the regional office developed this claim as separate and distinct from his claim for benefits for a lung condition. The record contains a notice letter requesting that he submit evidence to support his newly filed "claim for disability benefits based on Persian Gulf War service." R. at 163. Indeed, he submitted lay statements from his wife, his coworker, and a fellow soldier and coworker, which indicated that he experienced joint and overall body pain as a result of an undiagnosed illness. Medical reports from Drs. Arnold and Mitchum confirm these symptoms. Although the September 1998 Board decision referred only to shortness of breath, it still noted that Mr. Tyrues's claim was for service connection for a chronic disorder due to an undiagnosed illness.

"A claim is an application for entitlement to a VA benefit based on a current disability." *Roebuck*, 20 Vet.App. at 312-13; *see Schroeder*, 212 F.3d at 1269. In *Roebuck*, the Court held that "although there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim." 20 Vet.App. at 313. In this case, Mr. Tyrues has sought benefits for two *separate disabilities*: A diagnosed lung disorder, described as both pneumonia and bronchitis, and an undiagnosed chronic condition manifested by joint pain, body ache, memory loss, and stomach conditions alleged to be the result of his service in the Persian Gulf. *Compare Boggs v. Peake*, 520 F.3d 1330, 1336 (rejecting this Court's holding that two claims based on separate and distinct

33

diagnosed injuries can be considered the same claim if they involve the same symptomatology),[8] *with Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006) (holding that multiple diagnoses for a single disability "were not separate claims, [but were] merely two means of establishing the same end–the service connection claim"). Here, Mr. Tyrues could establish entitlement to service connection based on either of his disabilities.

The law clearly commands the determination that Mr. Tyrues has two separate claims. Section 1117 of title 38 of the U.S. Code provides entitlement to compensation on a presumptive basis to a Persian Gulf War veteran who complains of having an undiagnosed illness or illnesses that are 10% or more disabling during the presumption period established by the Secretary. 38 U.S.C. § 1117(a)(1)(A) and (B). Pursuant to section 1117(d)(2), the Secretary has promulgated 38 C.F.R. § 3.317, which provides, in pertinent part:

> (a)(1) Except as provided in paragraph (c) of this section, VA will pay compensation in accordance with chapter 11 of title 38, United States Code, to a Persian Gulf veteran who exhibits *objective indications* of a *qualifying chronic disability*, provided that such disability:
>
> > (I) Became manifest either during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a *degree of 10[%] or more* not later than December 31, 2006; and
> >
> > (ii) By history, physical examination, and laboratory tests *cannot be attributed to any known clinical diagnosis.*
> > . . . .
>
> (b) For the purposes of paragraph (a)(1) of this section, signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multi symptom illness include, but are not limited to:
>
> > (1) Fatigue
> > (2) Signs or symptoms involving skin
> > (3) Headache
> > (4) Muscle pain
> > (5) Joint pain
> > (6) Neurologic signs or symptoms
> > (7) Neuropsychological signs or symptoms

---

[8] *See Clemons v. Shinseki*, 23 Vet.App. 1 (2009) for this Court's application of *Boggs v. Peake*, 520 F.3d at 1336.

(8)   Signs or symptoms involving the respiratory system(upper or lower)
(9)   Sleep disturbances
(10)  Gastrointestinal signs or symptoms
(11)  Cardiovascular signs or symptoms
(12)  Abnormal weight loss
(13)  Menstrual disorders.

38 C.F.R. § 3.317 (2008) (emphases added); *see also* 38 U.S.C. § 1117(g).

As noted by the Secretary in his brief, 38 U.S.C. § 1117 provides a unique presumption of service connection for undiagnosed illnesses incurred in, or manifested during a presumptive period following, service in the Persian Gulf.  By their very nature, these claims involve undiagnosed illnesses.  In this case, however, Mr. Tyrues's lung condition has been diagnosed as both pneumonia and bronchitis.  He filed his original claim for a lung condition shortly after he was hospitalized for pneumonia.  At the December 1998 Board hearing, Mr. Tyrues discussed his lung condition in terms of previous diagnoses of pneumonia and a lung infection.  The medical records submitted with his claim reflect these diagnoses.  On the contrary, at the December 1998 Board hearing, Mr. Tyrues described symptoms including aching joints, memory loss, and stomach problems.  The May 1997 medical examination specifically noted these symptoms and diagnosed him with possible Persian Gulf Syndrome with shortness of breath, joint pain, and memory loss, which could be compensable under section 1117.

Mr. Tyrues's private and VA medical records reveal that, at various times, he has sought treatment for several of the symptoms noted in § 3.317, including muscle pain, joint pain, symptoms involving the respiratory system, and gastrointestinal symptoms.  These symptoms formed a basis for entitlement to service connection under 38 U.S.C. § 1117 that is distinct from Mr. Tyrues's claim for entitlement to benefits for a lung condition under 38 U.S.C. § 1110.  In support of his argument that he has submitted two theories of entitlement to service connection instead of two separate claims, Mr. Tyrues cites *Schroeder*, 212 F.3d at 1270.  However, in *Schroeder*, the veteran had a single diagnosed disability, an eye condition, and sought service connection for that condition on a direct basis and as a result of exposure to Agent Orange.  Unlike *Schroeder*, which involved separate theories for establishing a single claim, this case involves two separate factual bases for establishing entitlement to service connection for two different disabilities.  In this case, any claim for service connection for a *diagnosed* lung disorder, whether bronchitis or pneumonia, falls outside

35

entitlement to service connection under section 1117. Indeed, under the statute and implementing regulation, such disability "by history, physical examination, and laboratory tests *cannot be attributed to any known clinical diagnosis.*" 38 C.F.R. § 3.317(a)(1)(ii).

The facts in this case reveal that Mr. Tyrues filed two claims for VA benefits based on separate disabilities. If there are two claims and not one, then this case is easily resolved. The claim for VA benefits for a lung condition was resolved by the Board in its 1998 decision, from which Mr. Tyrues sought no appeal. This claim has, therefore, been finally resolved. Consequently, I agree with the majority that the Court does not have jurisdiction to review that claim now. 38 U.S.C. § 7266(a). However, I cannot agree with the majority's implied determination that in this case Mr. Tyrues's conditions constitute a single claim for VA benefits.[9] With respect to that matter, I respectfully dissent.

LANCE, *Judge*, with whom SCHOELEN, *Judge*, joins, concurring in part and dissenting in part: While I agree with the outcome on the theory that was addressed by the majority, I cannot agree that we lack jurisdiction over the entire claim. The majority opinion effectively overrules our decision in *Roebuck v. Nicholson*, 20 Vet.App. 307 (2006), by limiting the case to its facts. The majority does so in the name of administrative efficiency. However, I cannot agree that administrative efficiency trumps a veteran's interest in receiving the full amount of benefits that he is entitled to by virtue of his service to a grateful nation.

"An epigram widely attributed to Abraham Lincoln is appropriate in this case: How many legs does a dog have if you count his tail as a leg? Four. You can call a tail a leg if you want to, but it doesn't make it a leg." *Kuzma v. Principi*, 16 Vet.App. 140, 145 (2002) (en banc per curiam order) (Ivers, J. dissenting); *see also Arteaga v. Mukasey*, 511 F.3d 940, 946 (9th Cir. 2007) (using Lincoln's wisdom to conclude that "calling a street gang a 'social group' as meant by our humane and accommodating [asylum] law does not make it so"); *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 652 (3d Cir. 1998) (applying the epigram to conclude that an employer could not escape an arbitration clause by labeling an employee as an "independent contractor"). The majority

---

[9] Because I would find that Mr. Tyrues has two separate claims, I believe that the discussion in the majority's opinion regarding whether theories of service connection may be treated separately, including its consideration of *Harris*, *Roebuck*, and *Joyce*, *all ante* , is unnecessary and, even if it was properly included in the opinion, would be obiter dictum. However, I note that the Federal Circuit's order remanding this case would have the Court consider *Roebuck* and *Joyce*.

opinion holds that a Board decision is final because the Board says it is. I disagree. I believe that a Board decision does not become final until it is ripe for judicial review, regardless of the Board's desire to wash its hands of a particular theory before the claim has been fully developed and adjudicated. *See DiCarlo v. Nicholson*, 20 Vet.App. 52, 57 (2006) (stating that finality is "a measure of procedural maturity"); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting "as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric"). The practical effect of the majority's holding is that a claim can be finally denied on one theory before the evidence is fully developed and VA is fully informed as to the nature of the veteran's current condition and its etiology.

It is quite reasonable to expect that, after full development of the claim, a Board decision denying a claim on one theory will be contradicted by new evidence developed on remand of a different theory. For example, a Board decision could—as happened here—deny a claim on theory A because the evidence is against it, but remand the claim for further development on theory B. If the denial of theory A is a separate decision that must be appealed immediately, then an appellant may be prejudiced if this partial denial is final. It is easy to imagine a scenario where the remand as to theory B produces a new medical opinion that actually supports theory A instead because new facts come to light, there is an advance in medical knowledge, or there is simply a disagreement of opinion by a new expert reviewing the claim. However, if theory A has already been finally denied—either because the Board decision was not appealed or because the Court affirmed that decision based on the record as it existed at the time of the Board decision—then the appellant is now in the position of being finally denied as to both theories even though the evidence supports granting the claim as to a theory that was denied based upon an underdeveloped record. Even if the appellant realizes that the new evidence is material as to the theory that was originally denied, the effective date awarded upon reopening will be based upon the new claim rather than the original claim—potentially costing the appellant years of benefits. While such a process is administratively convenient, it is also deeply unfair.

There might be ways in which a claimant who is savvy or advised by counsel could avoid this prejudice. Perhaps the appellant could appeal the final decision as to theory A and argue that appellate review is premature until theory B is fully developed and decided because they are inextricably intertwined. However, the majority opinion holds, in essence, that alternative theories

37

of entitlement are not presumed to be inextricably intertwined, *see ante* at 18, and the evidence showing that the theories are intertwined may not be before the Court because it is not developed until after the remand of theory B.

However, most claimants do not have attorneys at the Board level or when they file their NOAs to Board decisions. The majority decision purports to save claimants from the burden of determining whether a Board decision should be appealed by adopting a bright-line rule that Board decisions that purport to be final must always be appealed. *Ante* at 18. However, this "benefit" to claimants is actually a mirage because it assumes that unrepresented claimants will know that the Court has adopted this bright-line rule. It is much more likely that a pro se appellant will (1) not understand that a Board decision that remands a claim as to some theories is still final as to the others; (2) accept the decision without knowledge of the evidence that will be developed on remand; or (3) appeal the denied theory on the merits even though the full record for the claim has yet to be developed. Under any framework, a premature NOA can never hurt a claimant. Only under the majority decision is a claimant penalized for not filing an NOA each time an individual theory is rejected.

The majority opinion also fails to reconcile its notion of theory-by-theory finality with the plain language of 38 U.S.C. § 5108. Section 5108 permits a claimant to reopen "a claim which has been disallowed" by submitting new and material evidence. What happens when a claimant obtains evidence that is new and material to a theory that has been finally denied before the whole claim has been denied? Would the appellant file a separate claim to reopen a claim that is still pending and being adjudicated? Similarly, 38 U.S.C. § 5110 limits the effective date for an award of benefits to the date of "the original claim" or "a claim reopened after final adjudication" to no earlier than the "date of the receipt of the application therefor." What is the effective date if theory B never becomes final before theory A is reopened and results in the grant of the claim? Section 5103(a)(1) of title 38 requires the Secretary to provide notice of "the evidence necessary to substantiate the claim" whenever a person applies for benefits. If theory A is still being processed and a claimant wants to reopen theory B, is any notice required given that no new claim is being filed? If notice is required, does it actually apply to the whole claim, or just to the theories that were previously denied? *See Kent v. Nicholson*, 20 Vet.App. 1 (2006) (section 5103(a) notice as to an application to reopen a claim must be tailored to the basis of the prior, final denial).

38

The Secretary's duty to assist has also been defined by Congress in terms of claims. *See* 38 U.S.C. § 5103A. Suppose a remand of theory B for a new medical opinion produces one that "indicates" that theory A may have merit, but theory A has already been finally denied. Is 38 U.S.C. § 5103A(d) triggered? *See McLendon v. Nicholson*, 20 Vet.App. 79 (2006). On its face, the duty applies to the claim, not to the theory. If section 5103A(d) revives the previously final theory A without an application (or even any intent) to reopen, what would be the effective date and what date would be relevant for determining what law was in effect at the time the claim was filed?

Although the majority opinion fails to address any of these issues, it puts the Court on course to simply mark out every instance of the word "claim" in title 38 and pencil in "theory" in order to make the statute functional. The alternative would be for the Court to pick and choose when Congress meant "theory" when it actually wrote "claim." I find either solution wholly unacceptable. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or—more importantly—veteran can rely on a statute or regulation to mean what it appears to say."); THE FEDERALIST NO. 62 (James Madison) ("It will be of little avail to the people that the laws are made by men of their own choice, if . . . no man who knows what the law is today can guess what it will be tomorrow.").

The only realistic benefit to claimants cited by the majority is that claimants may receive faster judicial review of the denied theories if claims may be denied and appealed on a piecemeal basis. *Ante* at 15. However, premature judicial review is likely to harm the appellant because the Court is prohibited from considering favorable evidence developed after the Board decision on review and may affirm the denial without benefit of the new information. *See Bonhomme v. Nicholson*, 21 Vet.App. 40, 43-45 (2007). More importantly, once the Court has gone down the track of allowing some types of interlocutory appeals in the name of faster justice, it is not apparent where the train will stop. If the Board rejects an argument concerning the duty to notify or the duty to assist, but remands for a different type of development, why should an appellant wait years before the Court gets involved? Conversely, the majority also fails to recognize that if the RO grants benefits on the second theory on remand, then any review of the first Board decision denying the same benefit is moot. The potential for the Court to waste time on moot appeals is part of the central reason why finality should be based upon principles of ripeness rather than blind deference to the

Board. Hence, the Court's decision effectively overrules *Mokal* by abandoning both ripeness and mootness as limitations on our jurisdiction. *See* 1 Vet.App. at 15.

Rather than ripeness or mootness, the majority purports to manage our theory-by-theory jurisdiction on the Board's choice to include "an 'order granting appropriate relief or denying relief.'" *Ante* at 9 (quoting 38 U.S.C. § 7104(d)). However, this standard grants the Board power to arbitrarily allow or deny claimants the ability to appeal theories by choosing whether to include such an order. For example, a Board decision may include a discussion of why the evidence does not support theory A, but remand for a new medical opinion addressing theory B. If the Board includes an order line formally denying theory A, then it must be immediately appealed. However, if it does not include such a line and remands the whole claim, then the decision is not appealable. By tying our jurisdiction to a technicality controlled by the Board, we grant the Secretary a tool to manage our jurisdiction as he sees fit. *Cf. Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) (en banc) (rejecting the argument that the Secretary has inherent authority to stay cases pending an appeal of a Court opinion to the Federal Circuit); *Marsh v. West*, 11 Vet.App. 468, 470 (1998) ("This Court has been wary of action or inaction by the B[oard] that would have had the effect of depriving this Court of jurisdiction to review a B[oard] decision over which the Court would have had jurisdiction but for the B[oard]'s action or inaction."). Alternatively, the Court will get involved in the business of determining whether a Board's discussion of a theory amounts to a formal denial regardless of the technicality.

I would also note that the majority's new concept of finality for Board decisions is inconsistent with the nature of finality at the regional office level. It is well established that RO decisions are appealed on a claim-by-claim basis by the appellant's filing a Notice of Disagreement (NOD). So long as a timely NOD is filed, an appellant is free to raise any theory of entitlement to the Board and the Board must consider all theories of entitlement raised by the record even if the theories are not raised by the claimant. *See Robinson v. Peake*, 21 Vet.App. 545, 553 (2008). Nonetheless, the majority concludes that a theory-by-theory concept of finality applies at the Board level even though claim-by-claim finality applies at the RO level. Moreover, it is not apparent how the majority opinion's concept of theory-by-theory finality can be reconciled with the Federal Circuit's decision in *Bingham v. Nicholson* that "[u]nder [38 U.S.C. § 7104(b)], finality attaches once

40

a claim for benefits is disallowed, not when a particular theory is rejected." 421 F.3d1346, 1348-49 (Fed. Cir. 2005).

The majority opinion asserts that applying *Roebuck* as written "creates a new exception to the rule of finality and ignores the fact that *Roebuck* explicitly was based on unique circumstances." *Ante* at 11. Nothing could be further from the truth. I read *Roebuck* as an application of well established, general principles of finality for appellate review. It has been more than 40 years since the Supreme Court explained

> The long-established rule against piecemeal appeals in federal cases and the overriding policy considerations upon which that rule is founded have been repeatedly emphasized by this Court. . . . [T]he rule as to finality "requires that the judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved."

*Andrews v. United States*, 373 U.S. 334, 340 (1963) (quoting *Collins v. Miller*, 252 U.S. 364, 370 (1920)) (citations omitted). This concept has been widely embraced by the federal appellate courts. *See*, *e.g.*, *Garner v. U.S. West Disability Plan*, 506 F.3d 957, 960-61 (10th Cir. 2007) (holding that a district court's characterization of its order as "final" is not binding and that "courts do not ordinarily treat the burden of having to participate in [additional] litigation as one that justifies appeal from a nonfinal order"); *Dieser v. Continental Cas. Co.*, 440 F.3d 920, 923 (8th Cir. 2006) ("A final decision . . . ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal quotation omitted)); *Nichols v. Cadle Co.*, 101 F.3d 1448, 1448-49 n.1 (1st Cir. 1996) (noting that certification of a pre-mature appeal "by a well-intentioned district judge can create a minefield for litigants and appellate courts alike" and holding that "a judgment is final (and, thus, appealable . . .) only if it conclusively determines all claims of all parties to the action"). Hence, I do not advocate for the creation of any type of "finality claim," but only for the application of the general rule defining when a claim is final. *Cf. DiCarlo*, 20 Vet.App. at 57 ("Finality is . . . a measure of procedural maturity. It distinguishes processes that have been completed from those that have not.").

Of course, if Congress desired to give this Court some interlocutory review power, it could certainly do so. Such authority might be narrowly tailored to rulings of law that would be appropriate for such review. *See* 38 U.S.C. § 7292(b)(1) (permitting interlocutory appeals to the Federal Circuit where "the ultimate termination of the case may be materially advanced by the

immediate consideration of [the] question"). If such a change were made, then the Court might be authorized to review issues peculiarly suited to interlocutory review without jeopardizing the claimant's effective date by torturing the definition of "a final Board decision" on a claim. Accordingly, I see neither the statutory authority for the Court's ruling nor the benefit to veterans created by encouraging piecemeal litigation. *Cf. Matthews v. Nicholson*, 19 Vet.App. 202, 206 (2005) (per curiam order) ("The Court cautions counsel against engaging in piecemeal litigation."); *Snyder v. Principi*, 16 Vet.App. 62, 69 n.3 (2002) (en banc per curiam order) (Steinberg, J., concurring) ("The Secretary should need no reminder of the Court's longstanding policy to discourage piecemeal litigation."); *Burton v. Principi*, 15 Vet.App. 276, 277 (2001) (per curiam order) ("We should not encourage the kind of piecemeal litigation in which the appellant here has engaged.").

Despite my misgivings, I would be constrained to agree with the majority if its opinion of the controlling caselaw cited compelled the outcome reached. Fortunately, it does not. Notably, the majority cites both *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000), and *Joyce v. Nicholson*, 443 F.3d 845 (Fed. Cir. 2006), and then proceeds to ignore the plain language it quotes from those opinions. As quoted by the majority, *Maggitt* defines the finality of a Board decision in terms of "'the benefit sought by the veteran.'" *Ante* at 9 (quoting 202 F.3d at 1376). Yet, inexplicably, the majority does not further address or apply *Maggitt*. Instead of applying this clear language, the majority relies upon language from the Federal Circuit's decision in *Elkins v. Gober*, 229 F.3d 1369 (Fed. Cir. 2000), while attempting to avoid acknowledging that it ruled on the finality of different claims, not different theories. While there is much Federal Circuit caselaw noting that judicial review of one claim may need to wait until agency adjudication of another claim is complete, it does not logically follow that individual theories of entitlement within one claim may be reviewed piecemeal.

The majority also relies on an overly broad reading of the Federal Circuit's decisions in *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997), and *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997). They are cited for the proposition that the Federal Circuit has blessed the concept of exercising jurisdiction over any issue where the Board purports to have rendered a final decision. Nothing could be further from the truth. The issue in both of those cases was whether the downstream elements of rating and effective date must be disputed through a new

Notice of Disagreement even though one had previously been filed disputing a denial of service connection. *See Barrera*, 122 F.3d at 1031; *Grantham*, 114 F.3d at 1158. The actual holding of *Grantham*—as relied upon in *Barrera*—was that the appeal of "the logically up-stream element of service connectedness" was independent of "the logically down-stream element of compensation level." *Grantham*, 114 F.3d at 1158-59. In other words, a dispute over the service-connection element of a disability compensation claim is jurisdictionally distinct from any dispute over a disability rating and effective date that is later awarded. This makes perfect sense. There is no reason to assume that an appellant who obtains a remand after initially losing on the service-connection element will necessarily be disappointed in the disability rating or effective date after prevailing on the service-connection element of a disability compensation claim on remand. Accordingly, it makes sense to require such an appellant to initiate a new appeal to express disagreement with the logically down-stream issues. Nothing in *Gratham*'s discussion of "logically down-stream elements" supports the proposition that alternative theories for proving the same element may be appealed independently of each other.

I believe the ultimate flaw in the majority's use of Federal Circuit caselaw is that it traces back to precedent outside the claimant-friendly realm of veterans law. As the majority notes, *Elkins* relies upon *Dewey Electronics Corp. v. United States*, 803 F.2d 650 (Fed. Cir. 1986). Not only did *Dewey Electronics Corp.* involve separate claims, as clearly stated in the opinion, it involved a sophisticated corporation suing the Federal Government for a contract violation. *Id.* at 651-53. In a contract suit—as with most cases in American law—the plaintiff is responsible for gathering and presenting all the evidence to support his claim. If the plaintiff fails to do so, then he has no one to blame but himself if appellate review of the agency contracting decision is reviewed based upon an inadequate record. Veteran benefits claims are an exception to this general rule. In this area, VA owes substantial duties to assist the claimant in the development of the claim. Therefore, it is inappropriate to presume that errors that clearly prejudice the development of evidence as to one theory of entitlement did not prejudice any other theory that may support an award of benefits. Hence, the majority opinion's analysis importing a concept of finality suited to sophisticated claimants before other agencies is fundamentally flawed. In addition, as the Federal Circuit observed in *Dewey Electronics Corp.*, "the agency's characterization of a decision is not determinative of the finality issue and the relevant statutes outlining the required administrative

procedures must be examined." *Id.* at 654. In other words, even the caselaw relied upon by *Elkins* recognized that courts may reject an agency's attempt to point to a tail and call it a leg. *See also Fagre v. Peake*, 22 Vet.App. 188, 191 (2008) (per curiam order) (rejecting the Secretary's characterization of a single Board decision as multiple separate Board decisions issued together).

In summary, I do not think that administrative convenience can justify the outcome reached here or the concomitant confusion and delays that will be generated as a result. Rather, because the majority opinion ignores the plain language of title 38 and controlling Federal Circuit precedent, overrules our panel decision in *Roebuck*, and will prejudice veterans who will receive final Board decisions denying benefits based upon records that are admittedly underdeveloped, I must respectfully dissent.